State vs. Watt.

---

## No. 11,761.

STATE OF LOUISIANA VS. WILLIAM WATT AND GEORGE WATT.

The proof disclosing that the confession of an accused was freely and voluntarily made, it is of no consequence that fire-arms were, at the time, deposited in the room where the parties were, though not exhibited to the defendants, they having been procured for a purpose altogether different from that of the intimidation of the accused.

Hypothetical questions put to white jurors, sworn on their *voir dire*, touching their prejudices against people of the colored race, do not present a question this court can decide, although there is evidence annexed to the bill; the trial judge having assigned no reasons for his overruling defendants' objection to the tendered jurors.

APPEAL from the Fifth Judicial District Court, Parish of Morehouse. *Richardson, J.*

---

*M. J. Cunningham,* Attorney General, and *J. P. Madison,* District Atttorney, for Plaintiff, Appellee:

The fact that a juror thinks the Caucasian race superior to the African does not disqualify him, nor does the fact that he thinks that on account of superior moral and intellectual development,

the former as a class are more likely to tell the truth than the latter, as a class. Such hypothetical questions are confusing and misleading as well as irrelevant, and are discountenanced by the courts. Before such a question could possibly be pertinent, it must be shown that both white and colored witnesses testified to contrary statements of fact. 45 An. 903.

---

*H. Flood Madison* and *S. T. Baird* for Defendants, Appellants:

Where the challenge is for bi s or opinion, a wide range of questions is permissible to show the state of the juror's mind toward either party. Am. and Eng. Ency of Law, Vol. 12, p. 359. Hence it was error for the trial judge to rule out the question propounded to juror, sworn on his *voir dire*.

Where a negro is on trial and a proposed white juror is sworn on his *voir dire*, and is asked "Is it not a fact as a general thing you would give greater weight to the testimony of the white witness than to that of the colored witness, their testimony being contradictory and on material points in the case?" and he answers "It is;" and another proposed white juror sworn on his *voir di e*, states it was his opinion that the white race is the most truthful, and is asked "Is it not a fact that you are predisposed to believe, as a general thing, the testimony as given in by white men in preference to that given in by the colored men?" and he answers "Yes; circumstances though would alter cases," such answers to such questions disclose an opinion, a state of mind, a bias or prejudice that renders said jurors incompetent; and it was errcr for the trial judge to refuse to sustain a challenge to said jurors for cause.

---

The opinion of the court was delivered by

WATKINS, J. The two defendants were indicted for burglary and larceny in two separate counts; and, having been convicted of petit larceny alone, they have appealed from a sentence to two years' imprisonment in the penitentiary.

In the brief of counsel for defendants only two propositions are argued: (1) the admissibility of certain confessions; (2) the declination of the trial judge to sustain challenges for cause to certain persons tendered as jurors.

## I.

With regard to the admissibility of the confessions, evidence was taken pro and con, and it is found in the record appended to the defendants' bill of exceptions No. 3.

That bill relates that the defendants' counsel objected to the introduction of the alleged confessions of the accused, on the ground that same were not made freely and voluntarily, and were not admissible in evidence, the written evidence being thereto annexed and made a part thereof; but the trial judge overruled the objection, and admitted the confessions in evidence over his objection and exception.

The judge assigns no reasons for his ruling; but it is predicated, doubtless on his appreciation of the evidence, that it failed to disclose that the confessions were superinduced by threats, show of violence or duress.

It must be borne in mind that the petit larceny charged against the defendants on the indictment is that of feloniously and wilfully taking two suits of clothes, three men's hats and five pairs of pants, the goods and property of Charles Weiss, with the intent to appropriate the same.

It appears from the evidence that the keepers of a saloon in the small town of Bonita missed some money, some one having effected an entrance to the house through the rear door, during the absence of the saloon-keeper at his supper.

Suspecting a small boy, John Gibson, who was engaged in cutting wood near by, of the theft, one of the proprietors set on foot the next day an investigation, calling to his assistance one of the merchants of the town, apprising him of his suspicions.

They found and captured John Gibson, and, by placing a rope around his neck, extorted from him the statement that Jack Harris and George Watt, the latter being one of the indicted defendants, had stolen the money.

It being Sunday, these proceedings were speedily noised abroad and a crowd of curiosity seekers assembled at the saloon.

At the suggestion of some one of the party, a messenger was dispatched to a church in the village for Watt and Harris to come down to the saloon. Those parties being informed of the object for which their presence was desired, they at once repaired to the saloon in company with their escort.

On arriving at the saloon, one C. W. Montgomery discovered that George Watt was wearing a hat and a suit of clothes which had been burglarized from the store of Charles Weiss, his step-father, about two months previously, and he at once took the hat off his head and demanded of him to tell him where he had obtained it, and the suit of clothes he was wearing.

To this question Watt at first replied that he purchased them from a party in Arkansas, to which Montgomery replied: "No, you did not, George; they came from the old man's store."

Immediately Watt replied and said: "That is right, Mr. Montgomery; and if you will go to the church and get William Watt, you will find another suit of your clothes and hat," at the same time making a statement as to the way they got into the store and what they had taken therefrom.

Two messengers were at once dispatched for William Watt, but they did not inform him of George Watt's statement, only telling him of Scott's loss of money from his saloon, his suspicion of the boy, John Gibson, and of his being then at the saloon, confined with a rope around his neck, charged with the theft of Scott's money. Thereupon William Watt went into the church, got his overcoat, mounted his horse and rode down to Scott's saloon, denying all knowledge of Scott's lost money.

On arriving at the saloon Montgomery propounded to him (William Watt) the same interrogatories, substantially, that he had propounded to George Watt, about *his* possession of a hat and suit of clothes which had been stolen from the store of Charles Weiss.

To this question he replied that he had bought them in Bastrop. He was *then* informed of the statement George Watt had made. William Watt then requested a private interview with Mr. Montgomery, and on being refused, he made full acknowledgment and proposed to pay him fifty dollars to quash the matter and let it drop.

But this proposition was declined.

When William Watt was first informed of the statement George Watt had made, the former at once said: "What is that, George?" and George replied: "Yes, that is right, William. They caught us with the clothes on, and there is no use denying it."

These facts are substantially sworn to by all the witnesses; those of the defendant as well as those of the State.

The conclusion seems clear and inevitable that these confessions were made, because the defendants were in the possession of goods which had been recently stolen, and they were confronted by the owners of the property.

The facts which are pointed to and relied upon, as furnishing proof of the confessions having been extorted through fear, threats, violence and intimidation, are the confinement of the boy, John Gibson, just before the confession of the defendants was made, and that fire-arms were brought to the saloon about that time.

Evidently, the confinement of and charge against Gibson had nothing to do with the confessions of or the charges against the two defendants. They are not being prosecuted for burglarizing Scott's store, or with the larceny of his money. Gibson was suspected of that crime, and for that reason he was taken in charge. He was not indicted and is not a defendant in this suit.

The charge of the indictment against William Watt and George Watt is the burglary of the storehouse and larceny of the goods of Charles Weiss, which is alleged to have occurred about two months prior to the larceny of Scott's money.

The two transactions are altogether distinct and different.

We gather from the testimony that, owing to apprehension felt by the parties who were interested in the matter, the guns and pistols were brought to the store for use, in case the emergency *subsequently* arose, rendering it necessary to defend themselves in case an assault should be made upon them by parties who might attempt to liberate the defendants by force.

To thus provide themselves against such anticipated attack was, to say the least, perfectly justifiable.

Certain it is that these fire-arms were not employed as a means of extorting confessions from the accused. The weight of the testimony is that the arms were procured *subsequent* to the confession. And it stands to reason that this hypothesis is true; for, had the defendants not made a confession there would have been no charge against them. And the discovery of Weiss' property *on* the persons of the two defendants was the first information there was of their complicity in that transaction.

On this question the judge ruled correctly.

State vs. Watt.

## II.

During the progress of the trial, certain persons—all of them white men—having been sworn on their *voir dire*, were interrogated, and various hypothetical questions were by the defendants' counsel propounded to them relating to their feelings and opinions in respect to the black, or colored race, with the view of determining from their answers whether they had or entertained any antipathy toward people of the black, or colored race, which rendered them, or either one of them, incompetent on that account to act as jurors—the two defendants being black, or colored people, and their witnesses also.

The judge, after hearing the questions and answers of witnesses, overruled the defendants' challenge for cause and directed the jurors to be sworn, over their objection and exception, and they were forced to accept them, their peremptory challenges having been at the time exhausted.

There is nothing in the bill of exception that we can take hold of on which to base an opinion. The answers made by the witnesses are found in the record appended to the defendants' bill of exceptions, but they fail to disclose any bias or prejudice on the part of those interrogated. If the jurors were in any way prejudiced against people of the colored race to such an extent as to have rendered them incompetent, such prejudice does not appear from the bill of exceptions, which *only* puts hypothetical questions, not appertaining to the guilt or innocence of the accused, thus rendering it impossible for us to see our way to deciding whether they were incompetent or not.

The judge's ruling was unquestionably correct.

As the remaining bills of exception are not discussed, and we have not been placed in possession of the grounds which are relied upon by the defendants for the reversal of the rulings of the trial judge, we do not feel called upon to express an opinion in reference to them.

Judgment affirmed.